205 P.3d 1141

**Clayton POULSON and Shelley Poulson, husband and wife, Plaintiffs/Appellants,**

v.

**Jean OFACK, a single person, Defendant/Appellee.**

No. 1 CA–CV 07–0499.

Court of Appeals of Arizona, Division 1, Department C.

March 17, 2009.

---

Gregg A. Thurston, Attorney at Law By Gregg A. Thurston, Phoenix, Attorney for Plaintiffs/Appellants.

Broening Oberg Woods & Wilson, PC By Brian W. Purcell, and James R. Broening, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BROWN, Judge.

¶ 1 Clayton and Shelly Poulson ("the Poulsons") appeal the trial court's order denying their request for attorneys' fees and expert witness fees and awarding only part of their requested taxable costs. The Poulsons assert that reimbursement of the fees and costs was mandatory under Arizona Revised Statutes ("A.R.S.") section 12–133(I) (Supp.2007) and Arizona Rule of Civil Procedure 77(f). Based on our conclusion that the trial court exceeded its discretionary authority under the statute and rule, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 In August 2005, the Poulsons filed suit against Jean Ofack for injuries suffered by Mr. Poulson arising from an automobile accident with Ofack. The case was subject to

compulsory arbitration. Following a hearing, the arbitrator found in favor of the Poulsons and awarded them damages of $39,000 plus $505.20 in taxable costs. In April 2006, Ofack timely appealed the arbitration award and a jury trial was set for February 20, 2007.

¶ 3 Four days before trial, the Poulsons disclosed additional records and invoices relating to medical treatment Mr. Poulson had received several months after the arbitration proceedings were finished. The amounts listed in the invoices totaled approximately $5000. Ofack objected to admission of the documents because they had not been timely disclosed. When the trial court inquired as to whether Ofack had suffered prejudice, her counsel responded that he just needed time for his expert to look at the additional records, which could be accomplished before the expert was expected to testify.

¶ 4 Following additional discussion, Ofack's counsel suggested that if the trial court intended to admit the additional records in evidence, the court should waive any sanctions "because that really throws my calculations off." [1] In response, the court commented: "Well, I think that we are in that situation that if that new medical evidence comes in, I don't see how I can impose any sanctions, if you don't do 25 percent better than you did earlier ...." The court further noted its concerns about the disclosure violation: "[I]f there's a few more medical bills, and for the same symptoms and the same treatments ... and similar units of charge, then there's really no prejudice to the defendant letting it in. If we have new symptoms, new treatments and new opinions, then I have a problem with it." The court ultimately admitted the exhibits, finding that the additional expenses were not substantial and did not "go to the essence" of the defendant's case.

¶ 5 The jury returned a verdict in the Poulsons' favor and awarded damages in the

amount of $30,000. The Poulsons requested $1058.20 in taxable costs, $23,981.82 in attorneys' fees, and $6875.98 in expert witness fees pursuant to Rule 76(f). Ofack objected to the Poulsons' motion for fees and costs, asserting that an award of fees would not be just or appropriate based on the untimely disclosure of the additional medical expenses, which increased the amount of damages she had to address at trial. The trial court ruled as follows:

> IT IS ORDERED denying Plaintiffs' Motion for Attorneys' Fees, Expert Fees, and Costs. This Court[,] finding that when it allowed Plaintiffs to introduce an additional $5,000.00 in medical expenses incurred subsequent to the March 1, 2006 mediation and not disclosed until February 16, 2007 (4 days prior to trial)[,] ... did so to be fair to the Plaintiffs, but also recognizes that Plaintiffs' late disclosure was a clear violation of Rules 26.1 and 76(g)(3), A.R.Civ.P. Accordingly, no sanction will be imposed pursuant to Rule 76(f), A.R.Civ.P.

Additionally, the court awarded $315 in costs to the Poulsons, who then filed a timely notice of appeal.

## DISCUSSION

¶ 6 In an appeal from an arbitration award, payment of fees and costs after a judgment is entered in the superior court is governed by A.R.S. § 12–133(I) and Rule 77(f).[2] Section 12–133(I) provides as follows:

> If the judgment on trial de novo is not at least twenty-[five] per cent more favorable than the monetary relief or other type of relief granted by the arbitration award, the court *shall* order that the deposit be used to pay, or that the appellant pay if the deposit is insufficient, *the following costs and fees, unless the court finds on motion that the imposition of the costs and fees would create such a substantial economic*

---

**1.** At the arbitration hearing, Mr. Poulson's actual medical expenses totaled about $17,000. By the time of trial, that amount had increased to approximately $22,000.

**2.** Effective January 1, 2008, Rule 76(f) was renumbered as Arizona Rule of Civil Procedure

77(f). The text of the rule was not changed. We also note that Rule 77(f) and A.R.S. § 12–133(I) have the same material provisions and thus our analysis in this opinion applies to both the rule and the statute.

*hardship as not to be in the interest of justice:*

1. To the county, the compensation actually paid to the arbitrator.

2. To the appellee, those costs taxable in any civil action and reasonable attorney fees as determined by the trial judge for services necessitated by the appeal.

3. Reasonable expert witness fees that are incurred by the appellee in connection with the appeal.

(Emphasis added.) [3]

¶ 7 The Poulsons argue that the court was obligated to award fees and costs they requested because Ofack failed to obtain a judgment that was twenty-five percent more favorable than the arbitration award. Ofack does not dispute that she failed to meet the twenty-five percent requirement; rather, she argues that the "substantial hardship" exception in § 12–133(I) confers broad discretion on a trial court to deny fees and costs and that the exception must be applied here, given the unusual circumstances presented.

¶ 8 We review the trial court's judgment de novo as it is based on the interpretation of statutes and court rules. *Vega v. Sullivan,* 199 Ariz. 504, 507, ¶ 8, 19 P.3d 645, 648 (App.2001). "Our primary objective is to discern and give effect to the intent of the legislature and our supreme court in promulgating A.R.S. § 12–133(I) and [Rule 77(f) ] respectively." *Id.* The best and most reliable indicator of intent is the language of the statute or rule. *Id.* at ¶ 9, 19 P.3d 645. If the language is unambiguous, it must be given effect as written. *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

¶ 9 Consistent with prior decisions of this court, we hold that the plain language of § 12–133(I) and Rule 77(f) mandates that a trial court order payment of fees and costs if the party appealing an arbitration award does not better its position at trial in excess of the required percentage, unless the court finds that imposing such an order would

cause a substantial economic hardship. *See Jarostchuk v. Aricol Commc'ns, Inc.,* 189 Ariz. 346, 350, 942 P.2d 1178, 1182 (App.1997) (referring to former arbitration rule and A.R.S. § 12–133(I) and recognizing that "[b]ecause the rule and statute provide that fees 'shall' be ordered on appeal to superior court, they are mandates."); · *see also Vega,* 199 Ariz. at 508, ¶ 14, 19 P.3d at 649 (noting that arbitration rule mandated an award of taxable costs to the non-appealing party if the judgment was not more favorable than the arbitration award to the party who appealed from that award as provided by statute); *Bhullar v. Tayyab,* 46 Cal.App.4th 582, 588, 54 Cal.Rptr.2d 17 (1996) (recognizing that purpose of arbitration scheme is to promote acceptance of arbitration awards and that award of costs and fees against unsuccessful party who refuses settlement offer is mandatory unless court finds it would create a manifest economic hardship). Stated differently, an appealing party who does not successfully better his or her position at trial by the statutorily required percentage faces the "sanction" of paying the other party's fees and costs. *See Vega,* ¶ 7, n. 4 (plaintiff's judgment at trial triggered application of "sanctions" under former arbitration rule). Thus, the presumed intent of the sanction provision is to discourage parties from pursuing marginal appeals of arbitration awards, as an appeal "effectively defeats the purpose behind compulsory arbitration." *Valler v. Lee,* 190 Ariz. 391, 395, n. 7, 949 P.2d 51 n. 7 (App.1997), citing *Foy v. Thorp,* 186 Ariz. 151, 920 P.2d 31 (App.1996) (Arizona law and public policy favor arbitration).

¶ 10 Ofack acknowledges the mandatory nature of § 12–133(I); however, she asserts that the trial court properly exercised its discretion to deny fees and a substantial portion of costs because imposing the fees and costs in this instance would create a "substantial economic hardship as not to be in the interests of justice." A.R.S. § 12–133(I). She concedes that she does not face actual economic hardship because her insurance company would pay any judgment im-

---

**3.** In 2000, the percentage by which the arbitration appellant had to better the outcome was increased from ten to twenty-five percent. 2000 Ariz. Sess. Laws, Ch. 35, § 1 (2nd Reg.Sess.). In 2007, after the trial in this case, the percentage was reduced from twenty-five to twenty-three percent. 2007 Ariz. Sess. Laws, Ch. 142, § 1 (1st Reg.Sess.).

posed against her, and payment of the judgment would not create an economic hardship for the company. Rather, she suggests that the economic hardship exception should be broadly construed to give a trial court discretion to deny fees and costs under unique circumstances such as the late disclosure of evidence that could affect the jury's verdict.

¶ 11 Ofack defends the trial court's decision on the basis that because the jury heard a different case than what the arbitrator heard, forcing her to pay the Poulsons' fees and costs would constitute a "substantial economic hardship as not to be in the interests of justice." Ofack also asserts that it would be patently unfair to award the Poulsons their fees and costs because the trial court did them a favor by allowing the untimely disclosed bills in evidence. Additionally, she points to the trial court's pretrial warning to the Poulsons of the risk that sanctions would not be granted because of the late disclosure.

¶ 12 We reject Ofack's attempt to broaden the scope of the economic hardship exception beyond its plain language. An *economic* hardship is based on the *financial* circumstances of the party facing the imposition of fees and costs. *See* Webster's Two New College Dictionary (3rd Ed.2005) (defining "economic" as relating to (1) "the development, production, or management of material wealth," (2) "matters of finance," and (3) "the necessities of life.") There is no evidence in this record on which the trial court could find a substantial economic hardship as contemplated by § 12–133(I).

¶ 13 As to the fairness of allowing the jury to consider additional evidence not presented to the arbitrator, neither the legislature nor the supreme court has limited post-arbitration trials to the evidence presented at the arbitration hearing. The arbitration scheme contemplates that a party appealing from an arbitration award may encounter additional legal and factual claims at trial. *Valler*, 190 Ariz. at 396, 949 P.2d at 56 (absent a failure to participate in the arbitration proceedings in good faith, any party appealing an arbitration award is entitled to a trial de novo on the law and the facts); A.R.S. § 12–133(H) (party may appeal arbitration award by filing demand for trial de novo); Ariz. R. Civ. P., Rule 77(g) (prior to trial de novo, the parties may seek additional discovery and file new lists of witnesses and exhibits).

¶ 14 The trial court was justifiably concerned about the Poulsons' attempt to introduce untimely disclosed evidence. The options for addressing such concerns, however, did not include waiver of the sanctions provision under 12–133(I), as the trial court's discretion under the statute is limited to (1) determining whether the economic hardship exception should be applied and (2) whether the fees requested by the prevailing party are reasonable. Although the trial court cautioned the Poulsons that their late disclosure could jeopardize their right to fees and costs, the court's admonition could not affect the mandatory sanction requirement of § 12–133(I). Ofack had the opportunity to request an appropriate sanction under the disclosure rules against the Poulsons for their failure to timely disclose the additional medical information, *see* Ariz. R. Civ. P. 16(f), 26(f), but she chose not to. As a result, she faced the risk of paying the Poulsons' fees and costs incurred during the trial proceedings if she did not better the outcome of the arbitration award by twenty-five percent.

¶ 15 We also conclude that the trial court improperly declined to award a portion of the Poulsons' statement of costs. According to § 12–133(I), costs includes the recovery all "costs taxable in any civil action." The Poulsons sought recovery for the costs they incurred for payment of filing fees, service of process and subpoena issuance fees, statutory witness fees, and deposition transcript fees. Ofack does not contend that any of the claimed costs requested by Poulson fall outside the scope of A.R.S. § 12–341, which provides the basis for determining taxable costs in all civil actions in the superior court.[4]

---

4. Taxable costs in the superior court are defined as follows:
   1. Fees of officers and witnesses.
   2. Costs of taking depositions.
   3. Compensation of referees.

4. Cost of certified copies of papers or records.
5. Sums paid a surety company for executing any bond or other obligation therein, not exceeding, however, one per cent on the amount

Nor does Ofack assert that any of these costs were unreasonable or unnecessary. *See Fowler v. Great Am. Ins. Co.,* 124 Ariz. 111, 114, 602 P.2d 492, 495 (App.1979) (noting that whether travel expenses for taking of depositions were reasonable and necessary is to be determined in the discretion of the trial court). Accordingly, the trial court was obligated to award the Poulsons their costs pursuant to § 12–133(I). *See Roddy v. County of Maricopa,* 184 Ariz. 625, 627, 911 P.2d 631, 633 (1996) (finding that trial court has no discretion to deny costs to the successful party under A.R.S. § 12–341); *Hooper v. Truly Nolen of Am.,* 171 Ariz. 692, 695, 832 P.2d 709, 712 (App.1992) (recognizing the mandatory nature of the cost recovery provision of § 12–341).

¶ 16 The Poulsons also request an award of attorneys' fees on appeal, contending that Ofack's objections to fees and costs in the trial court and on appeal were frivolous. Although we have rejected Ofack's arguments on appeal, we do not consider her arguments frivolous, and thus we decline to award fees.

### CONCLUSION

¶ 17 For the foregoing reasons, we reverse the trial court's order denying the Poulsons' request for attorneys' fees, expert witness fees, and a portion of their costs. On remand, the court shall order Ofack to pay reasonable attorneys' fees and expert witness fees to the Poulsons. The court is further directed to award Poulsons their taxable costs as requested in their statement of costs.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and PATRICIA K. NORRIS, Judge.

of the liability on the bond or other obligation during each year it was in force.

6. Other disbursements that are made or incurred pursuant to an order or agreement of the parties.