NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOE PARTIPILO, *Plaintiff/Appellee,*

*v.*

MARISIA JOYCE PENA, *Defendant/Appellant.*

No. 1 CA-CV 16-0610
FILED 2-15-2018

Appeal from the Superior Court in Maricopa County
No.  CV2015-090995
The Honorable David M. Talamante, Judge

**AFFIRMED**

COUNSEL

Kent Law PLC, Tempe
By Adam C. Kent, Jonathan J. Henry
*Counsel for Plaintiff/Appellee*

Huser Law Firm, Scottsdale
By Ronald E. Huser
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Maurice Portley[1] joined.

---

**S W A N N**, Judge:

¶1        Marisia J. Pena appeals from a judgment requiring her to pay Joe Partipilo $28,455 in attorney's fees under Ariz. R. Civ. P. ("Rule") 77. Because the evidence presented supports the award, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In March 2013, Pena and Partipilo were involved in a motor vehicle collision. Partipilo sued Pena for injuries resulting from the accident, and his claim was subject to compulsory arbitration under Rule 72. The arbitrator awarded Partipilo $10,768.75, which included $768.75 in taxable costs. Pena "appealed" the award to the superior court under Rule 77, and sought a trial de novo.

¶3        Before trial, Partipilo's counsel participated in both parties' depositions, each lasting about one hour, and filed one motion and a joint pretrial statement. Partipilo made a settlement offer of $9,500, but Pena let it expire and then made her own offer of $6,200, which Partipilo likewise did not accept. Partipilo also subpoenaed several witnesses, including a retained expert witness, to testify at trial. After the three-day trial, the jury awarded Partipilo $9,608.62, which included $2,108.62 in taxable costs.

¶4        Under Rule 77(h), when the result of a trial de novo is not at least 23% more favorable to the appellant than the arbitration award, the court "must" award to the appellee certain costs and fees, including attorney's fees and expert witness fees. Because the trial did not yield a result 23% more favorable to Pena than the arbitration award, Partipilo requested $59,000 in fees. Partipilo's lead counsel claimed that his and his co-counsel's hourly rate of $350 was equal to the prevailing rate for similar work by similarly experienced attorneys, and that his firm, including

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

support staff who worked at a reduced rate, spent approximately 200 hours on the case. Considering that request, the court awarded Partipilo $28,455 in attorney's fees, and Pena timely appeals.

## DISCUSSION

**¶5** Pena argues that the superior court's award of $28,455 in attorney's fees to Partipilo was unreasonably excessive. We review an award of attorney's fees for abuse of discretion, *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 595 (App. 1992), and will uphold the award so long as the court "could have made the ruling without exceeding the bounds of reason," *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985) (quoting *Davis v. Davis*, 78 Ariz. 174, 179 (1954) (Windes, J., specially concurring)). We view the record in the light most favorable to sustaining the superior court's fee award. *Solimeno v. Yonan*, 224 Ariz. 74, 82, ¶ 36 (App. 2010). And when, as here, the appellant does not provide transcripts in support of an appeal, "[w]e presume the items not included in the appellate record support [the] trial court's ruling." *Myrick v. Maloney*, 235 Ariz. 491, 495, ¶ 11 (App. 2014).

**¶6** A party may "appeal" a compulsory arbitration judgment and obtain a trial de novo in superior court.[2] Rule 77(a), (d). As noted above, however, if the judgment from the trial de novo is not at least 23% more favorable for the appellant than the arbitration judgment, the court must order the appellant to pay the appellee's costs and fees including the "reasonable attorney's fees . . . necessitated by the appeal." Rule 77(h)(2). The purpose of the conditional obligation to pay an appellee's fees is to "discourage parties from pursuing marginal appeals of arbitration awards, as an appeal effectively defeats the purpose behind compulsory arbitration." *Poulson v. Ofack*, 220 Ariz. 294, 297, ¶ 9 (App. 2009).[3]

---

[2] In truth, an "appeal" of an arbitration award bears no resemblance to a traditional appeal, because the court conducts no review at all of the arbitration award or the process that led to it. Such an appeal is simply an automatic right to request a trial de novo by jury. If the right did not exist, then the compulsory arbitration system created by our Rules of Civil Procedure would violate the jury right contained in Ariz. Const. art. VI, § 17.

[3] The question whether Rule 77(h) should be reexamined is for the Supreme Court. We doubt whether a party should ever face serious

**¶7**　　　　There is no argument that the trial result was not 23% more favorable than the arbitration result, and therefore there is no question that the court was required to order Pena to pay Partipilo's fees.　Pena argues that the court's fee award was not reasonable, as the Rule requires it to be. *See* Rule 77(h).　In *Granville v. Howard*, 236 Ariz. 29, 31–32, ¶ 11 (App. 2014), this court established a non-exclusive list of seven factors to consider in determining whether a fee award under Rule 77 is reasonable.　The *Granville* factors include comparing the amount in controversy to the fee award, considering how close the appealing party came to reaching the 23% improvement standard, whether requested fees were unnecessarily incurred in anticipation of fee-shifting, and the requesting party's obligation to pay his or her lawyer. *Id.* "No single factor is dispositive, and the weight to be given each factor will vary from case to case." *Id.* at ¶ 12. We discuss the relevant factors in turn.

**¶8**　　　　In its order awarding attorney's fees to Partipilo, the court stated that it had considered the *Granville* factors, but did not explicitly analyze the facts of the case under those factors.　Although courts are encouraged to make findings before entering a fee award, specific written findings are not required. *See id*.

I.　　THE RELEVANT FACTORS UNDER *GRANVILLE* SUPPORT THE COURT'S FEE AWARD.

　　A.　Amount in Controversy.

**¶9**　　　　Pena first contends that the amount in controversy was $7,500 (the amount of compensatory damages awarded by the jury), and argues that the fee award of $28,455 was unreasonably excessive considering that amount.　Under *Granville*, "the proportionality of the fee award to the

---

sanctions merely for insisting that the court afford her the rights to which she is entitled under the Constitution.　While rules of court should generally be structured to discourage economically inefficient behavior, efficiency is not a concern of equal dignity to constitutional individual rights. Recognizing that the Rule can lead to arbitrary results, this court encouraged trial courts to exercise their discretion with due regard for how close a litigant comes to the 23% threshold. *See Granville v. Howard*, 236 Ariz. 29, 31–32, ¶ 11 (App. 2014).　However, the Rule's high-stakes, binary approach to sanctions fails to accommodate for reasonable variations in results that can flow from the good-faith exercise of the right to trial.　Still, the Supreme Court long ago promulgated the Rule and we are not free to rewrite it.

amount at stake [is] a vital consideration." *Id.* at ¶ 11. Contrary to Pena's contention that the "amount in controversy" is limited to the amount actually awarded, the term is more aptly defined as the "damages *claimed* or relief *demanded* by the injured party." *Amount in Controversy*, Black's Law Dictionary (10th ed. 2014) (emphases added). This understanding of the term is supported by *Granville*, which uses the terms "amount in dispute" and "amount at stake" interchangeably with "amount in controversy," indicating that the proper number to compare with the fee award is the amount the plaintiff requested at trial. *See Granville*, 236 Ariz. at 32, ¶ 11; *see also* Rule 77(c).

**¶10** Here, the record does not indicate Partipilo's requested damages amount at trial or arbitration, nor do we have transcripts from trial to shed light on the issue. We therefore presume that the amount in controversy was, at the very least, $10,000 — the amount of the arbitration award. *See Myrick*, 235 Ariz. at 495, ¶ 11 (presuming the record not filed with this court supports the superior court's award); *see also Solimeno*, 224 Ariz. at 82, ¶ 36 (reviewing the record in the light most favorable to upholding the superior court's award). While the fee award is likely higher than the amount in controversy, a reasonable fee award may exceed the amount in controversy, *see Granville*, 236 Ariz. at 32, ¶ 11, and the weight this factor carries is subject to other factors, like the amount of time counsel spent on the case.

**¶11** In a similar argument, Pena contends that the difference between the attorney's fee award and Partipilo's likely obligation to his counsel is excessive. Pena speculates that because Partipilo's counsel was retained under a contingency fee agreement, he likely owed his counsel one-third of the trial award, which Pena contends would be approximately $2,500. "A contingency fee agreement, however, sets neither an absolute floor nor ceiling for a fee award under [Rule 77(h)]." *Id.* at n.2. But even if Partipilo's existing obligation to his counsel was only one-third of the total relief granted at trial, the court was not bound by that number, and it could consider other factors in arriving at a reasonable award.

B. Reaching the 23% Improvement Standard

**¶12** Pena contends that the result at trial would have been much closer to the 23% standard but for Partipilo's unreasonably inflated costs at trial. She argues that Partipilo unnecessarily hired a process server to subpoena each of the witnesses, and that if those costs had not been included in the trial award, she would have improved her outcome by 19%, rather than by 10.7%, which she admits is the actual improvement

percentage. The closer the appealing party comes to reaching the 23% standard, the more this factor will weigh in favor of that party. *See id.* at ¶ 11. Here, Partipilo called five witnesses, including an expert, and subpoenaed each of them. But because issuing subpoenas to witnesses is a practice expressly authorized by Rule 45, the superior court could reasonably have found these costs reasonable, and therefore included them in the calculation.

¶13　　Pena also points out that the award for compensatory damages was $10,000 at arbitration, and then $7,500 at trial, which is a 25% improvement. But in calculating whether the judgment changed by 23%, the court must include compensatory damages *and* taxable costs in the judgment amount. *See Granville*, 236 Ariz. at 31, ¶ 8; Rule 77(h). Here, including the taxable costs, the judgments were $10,768.75 at arbitration and $9,608.62 at trial — a 10.7% improvement for Pena. Because of the 23% improvement standard, this factor could reasonably support the court's fee award.

### C.　　Inflating Fees in Anticipation of Fee-Shifting

¶14　　Pena contends that Partipilo's counsel spent more time than reasonably necessary in anticipation of trial, and that the proposed hourly rate of $350 was unreasonably high, both of which contributed to an inflated fee request. An application for attorney's fees must be in sufficient detail to enable the court to assess the reasonableness of the time incurred, and billing rates should be similar to those prevailing in the community for similar work. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187–188 (App. 1983).

¶15　　Partipilo's counsel submitted a detailed log for the time expended on the case, showing approximately 156 hours spent by counsel and 48 hours by support staff. His counsel did not file any significant pretrial motions aside from a joint pretrial statement, and participated in two one-hour depositions. Both parties submitted settlement offers, but no negotiations took place. Partipilo's counsel and co-counsel, however, also prepared for and participated in the three-day trial. As to the hourly rate, counsel submitted an affidavit stating that $350 per hour was a reasonable rate and was justified by experience, skill, the difficulty of the matter, and the risk inherent in plaintiffs' litigation.

¶16　　Despite this evidence, the court substantially reduced Partipilo's requested award of $59,000 in attorney's fees — by more than half. The court considered the merits of the challenges to the number of

hours spent and the requested hourly rate, and made a reduction in order to reach the fee award. We cannot find on this record that the court abused its discretion.[4]

## II. WE DECLINE TO AWARD PARTIPILO ATTORNEY'S FEES ON APPEAL.

¶17 Partipilo requests attorney's fees on appeal under A.R.S. § 12-349(A)(1), claiming that Pena brought this appeal without substantial justification. Partipilo also requests that sanctions be imposed under ARCAP 25, claiming that Pena's appeal was frivolous. Although we hold the superior court did not abuse its discretion, we do not find this appeal frivolous and decline to award fees on appeal.

## CONCLUSION

¶18 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4] The court may avoid the mandatory award of fees if it finds "on motion, . . . that imposing costs and fees would create a substantial economic hardship that is not in the interests of justice." Rule 77(h)(3). No such motion was filed in this case, and Pena does not argue this provision on appeal.